

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-3-2005

# Chen v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-2985

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Chen v. Atty Gen USA" (2005). *2005 Decisions.* Paper 459.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/459

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-2985

———

GUI YING CHEN,
                                  Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                  Respondent

———

On Petition for Review of an Order
of the Board of Immigration Appeals
(BIA No. A79-417-053)

———

Argued June 8, 2005

Before: FUENTES, VAN ANTWERPEN, and BECKER, Circuit Judges.

(Filed: October 3, 2005)

Alexander K. Yu (Argued)
Suite 1002
401 Broadway
New York, NY 10013

ATTORNEY FOR PETITIONER

Robert E. Maher, Jr.   (Argued)
United States Department of Justice
Environmental Enforcement Section
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044

Christopher C. Fuller
Linda S. Wernery
William C. Minick
United States Department of Justice
Office of Immigration Litigation
P. O.  Box 878
Ben Franklin Station
Washington, DC 20044

ATTORNEYS FOR RESPONDENT

---

OPINION OF THE COURT

---

FUENTES, Circuit Judge.

Gui Ying Chen petitions for review of a decision by the Board of Immigration Appeals ("BIA") affirming the rejection by an Immigration Judge ("IJ") of her application for political asylum, withholding of removal, and relief under the Convention Against Torture, as well as its affirmance of the IJ's finding that her petition was frivolous.  We find that there is substantial evidence to support the BIA's decision and accordingly deny the petition.

**I.**

2

Chen claims that she was forced to undergo an abortion in China because she had become pregnant without being married. She arranged to be smuggled out of China and eventually arrived in Miami. She was detained on entry, charged with illegal entry, and paroled. She relocated to New Jersey. In support of her claim, she testified about the abortion and offered an abortion certificate and a fine receipt as corroboration of her claims. The government submitted an investigative report in which an investigator from the consulate found that the certificate and receipt were fraudulent, based on a letter from the abortion clinic that found the abortion certificate to have an incorrect title, size, and stamp and claimed that the names doctor was never employed by the clinic. The report also stated that the Birth Control Office found that the receipt was fabricated because Chen never violated their policies. The report included two untranslated letters, which it relied upon in making its conclusions. The IJ rejected Chen's application on credibility grounds, discussed more later. The IJ noted that he believed that Chen never was pregnant and never had an abortion, and deemed her application frivolous. The BIA affirmed both conclusions (the denial of the application and the frivolousness finding), but disagreed with the IJ on the issue of whether the record suggested that Chen never was pregnant and never had an abortion, noting that his conclusion was extremely speculative. Chen filed this petition for review.

## II.

Chen argues that (1) the IJ erred in admitting the investigative report; (2) the IJ's adverse credibility finding, which was adopted by the BIA, is not supported by substantial

3

evidence; and (3) the IJ's frivolousness finding should be vacated because it was based on the erroneous adverse credibility and fraud findings.

Chen first argues that the investigative report, upon which the IJ relied in order to dismiss Chen's corroborating documents, was erroneously admitted by the IJ because the documents on which the report was based were not translated by the government. See 8 C.F.R. § 1003.33. Although the IJ was troubled by the lack of translation and admonished the government, Chen never objected to the admission of the documents, and therefore waived this argument. Further, both Chen and her attorney are able to read the untranslated documents, and her counsel could not point to anything problematic in the documents, seriously casting doubt on any presence of prejudice due to the admission of the report.

Chen next challenges the admission of the report itself as a violation of due process. "Because the Federal Rules of Evidence do not apply in asylum proceedings, '[t]he test for admissibility of evidence . . . is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law.'" Ezeagwuna v. Ashcroft, 325 F.3d 396, 405 (3d Cir. 2003) (quoting Bustos-Torres v. INS, 898 F.2d 1053, 1055 (5th Cir. 1990)). "'In the evidentiary context, fairness is closely related to the reliability and trustworthiness of the evidence.'" Id. (quoting Felzcerek v. INS, 75 F.3d 112, 115 (2d Cir. 1996)). In Ezeagwuna, this Court found that admission of and reliance on the investigative report in that case constituted a due process violation. See id.

Chen argues that most of the problems that the Court found in Ezeagwuna are also

found here. We disagree. Although the investigation is not described in great detail and the names of the people doing the investigations at the hospital and the Birth Control Office are not included, the multiple hearsay problems present in Ezeagwuna are absent here. In addition, here, the report itself summarizes the investigation, rather than relying entirely on the untranslated documents. Accordingly, we do not find that admission of the investigative report violated due process.

Chen argues that the adverse credibility finding by the IJ was in error. As we have noted, "[a]n alien's credibility, by itself, may satisfy his burden, or doom his claim." Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The BIA's determination must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." 8 U.S.C. § 1105a(a)(4). "It can be reversed only if the evidence presented by [a petitioner] [is] such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." NLRB v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300 (1939).

The IJ found that Chen testified mechanically when describing her forced abortion.

5

He stated in his oral decision: "The respondent gave me the impression of reading from a book as to the procedures of the abortion more than a person who had actually gone through the procedure itself." (App. 17.) This Court must give a high degree of deference to an IJ's observations about demeanor, as he is in a unique position to assess such things. See Dia, 353 F.3d at 252 n.23. Here, the IJ provided a reason for his demeanor finding, and we must give his finding weight in our substantial evidence inquiry. Beyond demeanor, the most troubling inconsistency in Chen's testimony is her explanation as to why she left work–she first stated that she left her job at the glove factory because of her pregnancy, but when confronted with the fact that her pregnancy did not begin until after she left work, she stated that she left work because the factory closed down. (A.R. 71-72.) This goes to the heart of her claim, since it involves her pregnancy. We find that the IJ's demeanor observation coupled with Chen's inconsistency regarding her reasons for leaving work provide substantial evidence to support the adverse credibility finding, which provides a sufficient basis for rejection of her claims.

As noted, Chen also challenges the BIA's affirmance of the frivolousness finding by the IJ. The government first argues that the frivolousness finding was not adequately raised before the BIA, as it was not discussed at all in Chen's brief to the BIA, and therefore it cannot be challenged here. However, Chen's notice of appeal to the BIA stated as one of the reasons for appeal: "The frivolousness finding made by the Judge was overreaching and designed to punish an innocent victim of persecution." (A.R. 24.) Here, raising the issue in

6

the notice of appeal was sufficient to exhaust the argument, as the BIA did consider and affirm the finding.  See Bhiski v. Ashcroft, 373 F.3d 363, 367 (3d Cir. 2004).

8 U.S.C. § 1158(d)(6) provides that "[i]f the Attorney General determines that an alien has knowingly made a frivolous application for asylum" after receiving notice of the consequences of doing so, "the alien shall be permanently ineligible for any benefits" under the immigration laws.  See also Muhanna v. Gonzales, 399 F.3d 582, 588 (3d Cir. 2005). Section 1158(d)(6)'s implementing regulation states that "an asylum application is frivolous if any of its material elements is deliberately fabricated."  8 C.F.R. § 208.20.

The frivolousness finding could be sustained only on the basis that the documents submitted by Chen were fraudulent, as the inconsistencies in her testimony do not amount to deliberate fabrication of material elements of her claim.  See Muhanna, 399 F.3d at 589. The investigative report, which we found to be properly admitted above, provides substantial evidence to support the IJ's finding that Chen fabricated material elements of her claim.  We therefore must sustain the frivolousness finding.

**III.**

For the foregoing reasons, we will deny Chen's petition for review.

———

7

BECKER, *Circuit Judge*, concurring.

I concur in the judgment because I agree with Judge Fuentes that the IJ identified inconsistencies and implausibilities in the record that are sufficient to require denial of the petition for review. However, I do not agree that the consular officer's investigative report should have been admitted. I write separately to explain my disagreement about the receipt of the investigative report and to express my concern about the procedures followed in connection therewith.

An INS investigator forwarded three of Chen's documents to the American consular office in China to verify their authenticity. An investigator in the consular office in turn contacted the Chinese abortion clinic and the birth control office. Both the abortion clinic and the birth control office responded to the consular office that all three documents were fraudulent. In particular, they stated that the purported abortion certificate lacked certain words that would appear on an authentic form; that the size of Chen's certificate was different from the size of an actual certificate; that the stamp was fabricated; and that the abortion clinic had not employed a doctor of the name listed on the certificate. These statements were incorporated into the consular office investigator's report to the INS.

The report of the consular office investigator to the INS, however, did not mention what documents were forwarded to the clinic or the birth control office. Moreover, it is unclear from the record who conducted the investigation at the clinic or the birth control office or how the investigation was conducted, i.e. when the records were checked, which

8

records were reviewed, whether Chen's name was used, or other identifying criteria. It is therefore likely that these reports contain multiple hearsay, as the investigation was initiated by Susanna Liu, an official in Guangzhou, who queried unknown officials at the clinic and birth control office, and then received unsigned, untranslated reply letters.

Chen objected to this document before the IJ based on the unreliability of the documents. The IJ raised *sua sponte* the concern that the replies on which the Report was based were not translated. The IJ nevertheless received the report in evidence and relied upon it in making an adverse credibility determination. The IJ found that "[t]he report from China submitted by the Government discloses that no [abortion] certificate exists. Although the investigation leaves some issues unanswered, it clearly indicates that the certificate submitted by the respondent does not correspond to any record by the hospital which allegedly issued the document." Chen objects to the IJ's reliance on the investigative report, on the grounds that it was hearsay and inherently unreliable, and that the underlying reply letters, which were the basis of Liu's investigative report, were not translated.

I agree with both of Chen's contentions. I am particularly concerned about the admission of the untranslated replies from the Chinese authorities. In my view the report was not sufficiently trustworthy or reliable to have been admissible as evidence. The IJ therefore erred in using the report to discredit Chen's documentary evidence, under our jurisprudence,

summarized in the margin.[1]  I also note that the letter at issue in this case contains multiple

hearsay problems and the same lack of information about the manner and nature of the

"investigation" as existed in *Ezeagwuna v. Ashcroft*, 325 F.3d 396 (3d Cir. 2003).[2]

Although I believe that the IJ erred in relying on the investigative report, I

acknowledge that unlike *Ezeagwuna*, where the State Department letter was almost the

"entire" basis of the BIA's decision, here the investigative report appears to be only one

facet of the adverse credibility determination.  I cannot say that this error "fundamentally

---

[1] The Federal Rules of Evidence do not apply in asylum proceedings, rather "[t]he test for admissibility of evidence . . . is whether the evidence is probative and whether its use is fundamentally fair so as not to deprive the alien of due process of law." *Ezeagwuna*, 325 F.3d at 405 (quoting *Bustos-Torres v. INS*, 898 F.2d 1053, 1055 (5th Cir.1990)) (alterations in original).  "In the evidentiary context, fairness is closely related to the reliability and trustworthiness of the evidence." *Id.* (quoting *Felzcerek v. INS*, 75 F.3d 112, 115 (2d Cir.1996)).  Although we permit hearsay in asylum cases under certain circumstances, *see, e.g.*, *Kiareldeen v. Ashcroft*, 273 F.3d 542, 549 (3d Cir. 2001), we have held that reliance on hearsay may "raise[] the precise concerns that are fundamental to its general inadmissibility in civil proceedings, and raise[] concerns that it is not fundamentally fair," because of the inherent untrustworthiness of hearsay evidence. *Ezeagwuna*, 325 F.3d at 406.

[2] It is notable that the *same* Susanna Liu was the investigator in *(Qiu Rong) Lin v. Ashcroft*, 83 Fed. Appx. 480 (3d Cir. 2003) (not precedential opinion), which also involved an investigation of documents supporting a claim of forced abortion in China. The panel relied upon *Ezeagwuna* to conclude that the IJ erred in admitting the investigative report that claimed the documents were frauds.  In *Lin*, as here, it was unclear who conducted the initial investigation, whether the author of the investigation report had any first hand knowledge of the investigation itself, or how the investigation was actually conducted.  The Lin panel concluded that  "Without more information, a factfinder could only speculate about the reliability of the Consulate's investigation," and, thus, held that the IJ should not have relied upon the investigative report in finding that Lin's documents were fabricated. *Id.* at 485.

upset[] the balancing of facts and evidence upon which an agency's decision is based." *(Gui Cun) Liu v. Ashcroft*, 372 F.3d 529, 534 (3d Cir. 2004). I therefore join in the judgment.